Kerry K. Fennelly (SBN 232621)
kfennelly@kraw.com
Valentina S. Mindirgasova (SBN 272746)
vmindirgasova@kraw.com
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100 tel
(760) 747-1188 fax

Attorneys for Plaintiffs,
GCIU-Employer Retirement Fund and
Board of Trustees of the
GCIU-Employer Retirement Fund

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND AND BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND,<br><br>         Plaintiffs,<br><br>    v.<br><br>ALLEN PRINTING, INC., a Minnesota Corporation,<br><br>         Defendant. | CASE NO. 2:19-cv-08505-GW-KESx<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)**<br><br>Hearing Date: March 9, 2020<br>Hearing Time: 8:30 a.m.<br>Judge: George H. Wu<br>Place: Courtroom 9D<br><br>[Accompanying Papers: DECLARATION OF DOUG WISMAN IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT PURSUANT TO FRCP 55(B); [PROPOSED] ORDER GRANTING MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT PURSUANT TO FRCP 55(B)] |

1

NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FRCP 55(B)

TO THE HONORABLE COURT AND TO ALL PARTIES:

PLEASE TAKE NOTICE that on March 9, 2020 at 8:30 a.m. this matter will be heard in the above entitled Court located at 350 West 1st Street, Courtroom 8A, Los Angeles, CA 90012-4565, the Plaintiffs in this case will move this Court to grant Entry of Default Judgment.

The Motion is based upon this Notice and Memorandum of Points and Authorities in Support of the Motion For Entry of Default Judgment Pursuant to Federal Rule of Civil Procedure 55(b) ("Motion"); the Declaration of Doug Wisman in Support of Motion for Entry of Default Judgment Pursuant to Federal Rule of Civil Procedure 55(b) ("Wisman Decl."); and the [Proposed] Order Granting Plaintiffs' Motion for Entry of Default Judgment by Court Pursuant to Federal Rule of Civil Procedure 55(b); as well as any oral and documentary evidence as may be allowed at the hearing of this Motion.

Dated: February 6, 2020          /s/ Valentina S. Mindirgasova
                                 Kerry K. Fennelly
                                 Valentina S. Mindirgasova
                                 Kraw Law Group, APC
                                 1017 East Grand Avenue
                                 Escondido, CA 92025
                                 (760) 747-1100 tel
                                 (760) 747-1188 fax
                                 kfennelly@kraw.com
                                 vmindirgasova@kraw.com

                                 Attorneys for Plaintiffs

# TABLE OF CONTENTS

**PAGES**

I.   Introduction ................................................................................3

II.  Jurisdiction and Venue ................................................................4

III. Facts and Procedural History .......................................................4

IV.  Legal Standard ...........................................................................6

V.   Plaintiffs Have Met the Procedural Requirements .........................7

VI.  Plaintiffs Have Satisfied the *Eitel* Factors ..................................7

    A.   *Denial of Default Judgment Would Prejudice the Plaintiffs* ...............8

    B.   *Plaintiffs Have Demonstrated the Sufficiency of the Merits of Their Claims* ................................................................................8

    C.   *The Amount of Money at Stake is Proportional to the Harm Caused by Defendant's Conduct* .......................................................10

    D.   *There is No Factual Dispute That Would Preclude Entry of Default Judgment* ................................................................................10

    E.   *The Possibility of Excusable Neglect is Minimal*.......................10

    F.   *The Six Eitel Factors Have Been Met and Are Not in Conflict with the Policy Favoring Decisions on the Merits*................................11

VII. Requested Damages....................................................................11

    A.   *Withdrawal Liability*.............................................................11

    B.   *Prejudgment Interest* ...........................................................14

    C.   *Attorney's Fees and Costs*.....................................................15

VIII. Conclusion................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Carpenters Pension Trust Fund for Northern California v. Underground Const. Co., Inc.*, 31 F.3d 776, 778 (9th Cir. 1994)……………………..……...8

*Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)....................................6-8,11

*Elektra Entm't Grp. v. Bryant*, No. 03-6381GAF, 2004 U.S. Dist. LEXIS 26700, at *5 (C.D. Cal. Feb. 13, 2004)……………………………………....…..11

*Kloepping v. Fireman*, No. C 94-2684 THE, 1996 U.S. Dist. LEXIS 1789, at *2 (N.D. Cal. Feb. 13, 1996)…………………………………………………8

*Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 n.19 (C.D. Cal. 2010).........................................................................6, 7,10,11

*Moore v. Harris*, 623 F.2d 908, 914 (4th Cir. 1980) .................................................14

*Operating Eng'rs Pension Trust Fund v. Clarke's Welding, Inc.*, 688 F. Supp. 2d 902, 914 (N.D. Cal. 2010) ...........................................................14

*Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) ............................................................................6,8

*Solice v. Vigilance, Inc.*, No 08-05083 JW, 2009 U.S. Dist. Lexis 63541, at *4-6 (N.D. Cal. July 9, 2009) ...........................................................10

*United States v. Fiorillo*, 186 F.3d 1136, 1148 (9th Cir. 1999) ..............................13

1

**Statutes**

2

29 U.S.C.

3

§ 185(a) ...............................................................................................4

4

§ 1001 .................................................................................................3

5

§ 1002(5) .............................................................................................4

6

§ 1132(e) .............................................................................................4

7

§ 1132(e)(2) .........................................................................................4

8

§ 1132(f) ..............................................................................................4

9

§ 1132(g)(2) .......................................................................................14

10

§ 1132(g)(2)(D) .................................................................................15

11

§ 1381 .................................................................................................9

12

§ 1381(b)(1) .......................................................................................11

13

§ 1383 .................................................................................................4

14

§ 1383(a) .............................................................................................9

15

§ 1391 ........................................................................................5,10,11

16

§ 1399 .........................................................................................9,13,14

17

§ 1399(b)(1) .......................................................................................12

18

§ 1399(b)(2) .........................................................................................5

19

§ 1399(c) ............................................................................................5,9

20

§ 1399(c)(1)(B) ..................................................................................12

21

§ 1399(c)(2) .........................................................................................5

22

§ 1399(c)(4) .......................................................................................13

23

§ 1399(c)(5). ........................................................................5,9,10,12,13

24

§ 1399(c)(6) .......................................................................................14

25

§ 1401(a)(1) .......................................................................................5,9

26

§ 1401(b)(1) .......................................................................................5,9

27

§ 1451(b) ...........................................................................................14

28

§ 1451(c) .............................................................................................4

§ 1451(d)..................................................................................................4

Employee Retirement Income Security Act of 1974

§ 3(5)......................................................................................................4

§ 4201(b)(1)...........................................................................................11

§ 4203 ....................................................................................................4

§ 4211 ...............................................................................................10, 11

§ 4219 ...............................................................................................13, 14

§ 4219(b)(1)...........................................................................................12

§ 4219(b)(2).............................................................................................5

§ 4219(c)..................................................................................................5

§ 4219(c)(1)(B)..................................................................................12,13

§ 4219(c)(2)..............................................................................................5

§ 4219(c)(5)......................................................................................5,12,13

§ 4219(c)(6)............................................................................................14

§ 4221 .....................................................................................................5

§ 4221(a)(1).............................................................................................5

§ 4221(b)(1).............................................................................................5

Labor-Management Relations Act

§ 301(a)...................................................................................................4

Federal Rules of Civil Procedure

Rule 8(b)(6)………………………………………………………………7

Rule 12…………………………………………………………………….7

Rule 54(c)……………………………………………..…………………7,11

Rule 55(b)…………………………………………………………...………3

Rule 55(b)(2)………………………………………………....……………3

## Local Rules

Rule 55-1………………………………………………………..…………6,7

Rule 55-3………………………………………………………………15

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 55(B)**

Plaintiffs, the GCIU-Employer Retirement Fund and the Board of Trustees of the GCIU-Employer Retirement Fund, respectfully move this Court to enter default judgment against Defendant, Allen Printing, Inc. ("Allen Printing") under Fed. R. Civ. P. 55(b)(2). Defendant has failed to appear or otherwise defend itself in this matter, and the clerk has noted their default upon the record (ECF No. 18). For the reasons set forth below, the Court should enter default judgment against Defendant.

## I.   Introduction

On October 2, 2019, Plaintiffs GCIU-Employer Retirement Fund ("Fund") and the Board of Trustees of the GCIU-Employer Retirement Fund ("Board") filed their Complaint ("Complaint") (ECF No. 1) against Defendant for the collection of withdrawal liability incurred as a result of its withdrawal from the multiemployer pension plan arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001 *et seq.* Plaintiffs amended their complaint on December 9, 2019 to add an additional claim for the production of payroll audit documents so that Plaintiffs could confirm that Defendant did not owe any additional monies to Plaintiffs. (ECF No. 15). The court clerk entered default against Defendant on January 7, 2020 (ECF No. 18). Plaintiffs then filed the instant Motion for Entry of Default Judgment ("Motion") against Defendant.

This Motion seeks a default judgment awarding damages for withdrawal liability, interest, attorneys' fees, and costs with respect to Plaintiffs' first claim for relief. Plaintiffs no longer seek a judgment on their second claim for relief, the production of payroll audit documents, because Defendant has provided the documents needed for Plaintiffs to complete their payroll audit. Thus, Plaintiffs dismiss their second claim for relief.

## II.     Jurisdiction and Venue

This Court has jurisdiction pursuant to 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).  Venue lies in this Court under 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Plaintiff Fund is administered in Los Angeles County, California.

## III.     Facts and Procedural History

Plaintiff Fund is a multiemployer pension plan and is administered in Pasadena, California.  Plaintiff Board of Trustees, the plan sponsor of the Fund, is comprised of present trustees who are named fiduciaries of the Fund.  The Board of Trustees administers the Fund in Pasadena, California. Defendant Allen Printing was a corporation organized under the laws of the State of Minnesota.  At all times relevant to this action, Defendant has been an "employer" as the term is defined by section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, as defined by section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a).

As a result of a collective bargaining agreement ("CBA") with GCC/IBT Local 1-M ("Local Union"), Defendant was required to make contributions to the Fund on behalf of certain employees.  Pursuant to the CBA, the Defendant was also bound by the terms and conditions, rules and regulations of the Fund's Trust Agreement ("Trust Agreement"). (First Amended Complaint ("FAC") Exhibit 1.)

As of 2017, Allen Printing ceased participating in the plan and thus, stopped making contributions to the Fund.  Accordingly, the Fund determined that Allen Printing withdrew from the Plaintiff Fund, effectuating a "complete withdrawal" from the Fund under section 4203 of ERISA, 29 U.S.C. § 1383.  As a result, Defendant became subject to withdrawal liability under  section 4203 of ERISA, 29 U.S.C. § 1383 .

On December 6, 2018, Plaintiffs notified Defendant of this liability in a Notice of Complete Withdrawal Liability and Demand for Payment ("Notice and Demand") (FAC ¶13; FAC Exhibit 3).  The Notice and Demand included an actuarial calculation of the withdrawal liability in the amount of $722,679 and provided Defendant with a

4

payment schedule for the withdrawal liability assessment in accordance with the requirements of section 4219(c) of ERISA, 29 U.S.C. § 1399(c).  Defendant failed to make payments pursuant to the payment schedule as required under section 4219(c)(2) of ERISA, 29 U.S.C. § 1399(c)(2).

On February 25, 2019, Plaintiffs provided via certified mail a Notice of Failure to Pay Withdrawal Liability and Demand for Cure ("Demand for Cure") to Defendant in accordance with section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), informing Defendant that it had sixty (60) days to cure the delinquency prior to the determination of a default within the meaning of section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5) (FAC ¶18; FAC Exhibit 4).  Defendant was advised in the Demand for Cure that if payment was not made within 60 days to cure the default, the entire assessments and interest thereon shall be immediately due. Defendant failed to cure the required withdrawal liability payments pursuant to the Demand for Cure and thus, Defendant is in default within the meaning of section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5).

Plaintiffs' Notice and Demand also informed Defendant that pursuant to section 4219(b)(2) of ERISA, 29 U.S.C. § 1399(b)(2), Defendant had 90 days to request a review or object to the assessments.  Plaintiffs' Notice and Demand also noted the time restriction imposed by section 4221 of ERISA, 29 U.S.C. § 1391, regarding arbitration applied to the Notice and Demand. (Complaint Exhibit 3). Defendant did not initiate arbitration pursuant to § 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1) and the time to initiate arbitration has expired.

As Defendant failed to make withdrawal liability payments and did not request arbitration proceedings pursuant to section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1), the amounts demanded became due and owing pursuant to section 4221(b)(1) of ERISA, 29 U.S.C. § 1401(b)(1).  Based on Defendant's continued failure to pay, Plaintiffs brought this suit on the ground that Defendant is in default under section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5) and the Fund's Withdrawal Liability Procedures to which Defendant is bound.  A copy of the Fund's Withdrawal

5

Liability Procedures is submitted as Exhibit 3 to the Declaration of Doug Wisman ("Wisman Decl.") submitted herewith in support of Plaintiffs' Motion for Entry of Default Judgment.

Accordingly, Plaintiffs seek to recover: $722,679 in withdrawal liability, $38,588 in prejudgment interest (plus $94.05 per day from February 6, 2020 until a judgment is entered), $18,825.34 in attorney's fees (plus $1.88 per day from February 6, 2020 until a judgment is entered), and $1,720.50 in costs.

## IV.   Legal Standard

Before a Court may rule on a Motion for Default Judgment ("Motion"), it first must determine whether the Motion complies with Fed. R. Civ. P. 55 and Local Rule 55-1. *See Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). The Motion must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the Motion has been served on the defaulting party, if required. *Id.* at 1175; see also *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 n.19 (C.D. Cal. 2010) (holding that service on defaulting party is required only if the party has appeared in the action).

Once these procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion." *Landstar*, 725 F. Supp. 2d at 919. Entry of default does not automatically entitle the non-defaulting party to a court-ordered judgment. *See Pepsico*, 238 F. Supp. 2d at 1174. In fact, default judgments are ordinarily disfavored. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Accordingly, the Ninth Circuit has instructed courts to consider the following factors in deciding whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute

6

concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

Upon entry of default, the well-pleaded allegations of the complaint, except those concerning damages, are deemed true. Fed. R. Civ. P. 8(b)(6). The court, however, must assure itself that "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Landstar*, 725 F. Supp. 2d at 920. Further, the plaintiff must provide evidence of its damages, and the damages sought must not be different in kind or exceed the amount demanded in the pleadings. Fed. R. Civ. Pro. 54(c) ("A judgment by default shall not be different in kind from, or exceeding amount, what is demanded in the pleadings.").

## V.    **Plaintiffs Have Met the Procedural Requirements**

Plaintiffs have satisfied the procedural requirements for default judgment under Local Rule 55-1. Specifically, Defendant has not appeared in this action and has not responded to the operative complaint within the time permitted by Fed. R. Civ. P. 12. Moreover, Plaintiffs filed a Request for Entry of Default on the Complaint on January 6, 2020 and Default by Clerk was entered January 7, 2020. Defendant is not a natural person, and therefore is neither an infant nor an incompetent person. In addition, because Defendant is not a natural person, they are not exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. (Wisman Decl. ¶ 3). Plaintiffs have served a copy of this Motion on Defendant in conjunction with the filing of the Motion. However, it should be noted that because Defendant has not appeared in the action, Plaintiffs are not required to serve notice of this Motion.

Therefore, Plaintiffs have met the procedural requirements for default judgment under Local Rule 55-1.

## VI.    **Plaintiffs Have Satisfied the *Eitel* Factors**

As previously discussed, the Ninth Circuit has instructed courts to consider the following when determining whether default judgment should be granted: the

7

possibility of prejudice to the plaintiff; the merits of the plaintiff's substantive claim; sufficiency of the complaint; the sum of money at stake in the action; the possibility of a dispute concerning material facts; whether the default was due to excusable neglect; and the strong policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. Per the discussion below, the Court should find that the *Eitel* factors in this instant matter favor the granting default judgment.

## A.  *Denial of Default Judgment Would Prejudice the Plaintiffs*

A denial of default judgment that leaves a plaintiff without other recourse has been found to be prejudicial. *Pepsico, Inc.*, 238 F. Supp. 2d at 1177. Here, denying default judgment would leave Plaintiffs with no other means to recover the damages they sustained by Defendant's withdrawal. Plaintiffs have made efforts to contact Defendant to recover the withdrawal liability in accordance with ERISA and the Plaintiff Fund's Withdrawal Liability Procedures, but Defendant has failed to comply. (Wisman Decl. ¶¶ 10-11.) Moreover, if Defendant does not compensate the Plaintiff Fund for its delinquency, Plaintiffs will suffer damages as a result of the unfunded vested benefit obligations of the multiemployer plan, therefore unfairly burdening the Plaintiff Fund's participating employers with increased payments and participating members with potential reductions in benefits. See *Carpenters Pension Trust Fund for Northern California v. Underground Const. Co., Inc.*, 31 F.3d 776, 778 (9th Cir. 1994) (explaining that ERISA was intended to protect against this harm).

Based on the foregoing, Plaintiffs would suffer prejudice absent the entry of default judgment.

## B.  *Plaintiffs Have Demonstrated the Sufficiency of the Merits of Their Claims*

The second and third *Eitel* factors are often analyzed together. The Ninth Circuit has "suggested that these two factors require that a plaintiff 'state a claim on which [it] may recover.'" *Pepsico*, 238 F.Supp. 2d at 1175 (quoting *Kloepping v. Fireman*, No. C 94-2684 THE, 1996 U.S. Dist. LEXIS 1789, at *2 (N.D. Cal. Feb. 13, 1996)).

8

If an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan. 29 U.S.C. § 1381. A withdrawal occurs when an employer permanently ceases to have an obligation to contribute under the plan. 29 U.S.C. § 1383(a). Congress has established the procedure and methods for computing and assessing the amount of liability of a withdrawing employer. Under 29 U.S.C. § 1399, the amount of withdrawal liability is first computed by the pension plan's sponsor and the employer is then notified of the amount and the schedule of payments to be made. The employer is then entitled, within 90 days of such notice, to ask the sponsor to review any specific matter relating to the determination of the employer's withdrawal liability. 29 U.S.C. § 1399(c). "Any dispute" between an employer and the plan sponsor concerning the employer's withdrawal liability "shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Arbitration may be initiated within a 60-day period after the employer is notified of the sponsor's final determination concerning withdrawal liability (or 120 days after the employer requested the sponsor to review the matter, whichever date is earlier). 29 U.S.C. § 1401(a)(1). If arbitration proceedings are not initiated within the time period prescribed by the statute, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1). If the employer fails to make payment when due and fails to cure the delinquency within 60 days of notice of the delinquency, the plan sponsor is entitled to obtain immediate payment of the entire amount of the employer's outstanding withdrawal liability. 29 U.S.C. § 1399(c)(5).

Here, Plaintiffs have adequately stated a claim that Defendant incurred withdrawal liability based upon its complete withdrawal from the multiemployer plan. (FAC ¶¶ 12-13). First, Plaintiffs have submitted a copy of the CBA that bound Defendant to make contributions to the Plaintiff Fund. (FAC ¶ 11, FAC Exhibit 2). Second, Plaintiffs provided copies of the letter they sent notifying Defendant of its withdrawal liability. (FAC ¶ 14, FAC Exhibit 3). Finally, Plaintiffs properly alleged

9

that because Defendant neither sought arbitration nor cured its deficiencies, it entered into "default" under 29 U.S.C. § 1399(c)(5). (FAC ¶¶ 20-22).

Based on the foregoing, Plaintiffs have demonstrated the sufficiency of the merits of both of their claims and this weighs in favor of default judgment.

## C. *The Amount of Money at Stake is Proportional to the Harm Caused by Defendant's Conduct*

This factor asks "whether the recovery sought is proportional to the harm caused by [d]efendant's conduct." *Landstar*, 725 F. Supp. 2d at 921 (internal citations omitted). Plaintiffs seek to recover $722,769 in withdrawal liability. Plaintiffs have provided detailed calculations of the withdrawal liability based upon the statutory formulas provided in section 4211 of ERISA, 29 U.S.C. § 1391, which supports the outstanding balance. (Wisman Decl. ¶¶ 7-9). Therefore, based on the evidence submitted, the Court should be able to conclude that the damages sought are "consistent with the terms of the contracts and are otherwise appropriate." *Landstar*, 725 F. Supp. 2d at 921.

## D. *There is No Factual Dispute That Would Preclude Entry of Default Judgment*

Defendant has made no attempt to challenge the accuracy of the allegations in the Complaint. Moreover, Plaintiffs have provided support of their factual allegations with ample evidence, including the submission of relevant exhibits upon the filing of the Complaint and the Declaration of Doug Wisman in support of this Motion. As such, there should be "no factual dispute precluding entry of default judgment. *Landstar*, 725 F. Supp. 2d at 921-22.

## E. *The Possibility of Excusable Neglect is Minimal*

The possibility of excusable neglect is minimal. Even where a defendant is only constructively served through the Secretary of State, the failure to appear or defend is not a result of excusable neglect. See *Solice v. Vigilance, Inc.,* No 08-05083 JW, 2009 U.S. Dist. Lexis 63541, at *4-6 (N.D. Cal. July 9, 2009). Here, Defendant's CEO was served with the Summons and Complaint on November 21, 2019 (ECF No. 10), and

with the Summons and First Amended Complaint on December 10, 2019 (ECF No. 16). However, Defendant has failed to respond and has made no effort to appear before this Court. Thus, this factor should weigh in favor of granting default judgment.

### F. *The Six Eitel Factors Have Been Met and Are Not in Conflict with the Policy Favoring Decisions on the Merits*

On balance, even though there is a general preference to decide matters on the merits, the first six *Eitel* factors discussed above strongly favor the granting of a default judgment against Defendant.

## VII.   Requested Damages

Awards granted after entering default judgment are governed by Fed. R. Civ. P. 54(c), which "allows only the amount prayed for in the complaint to be awarded to the plaintiff in default." See *Elektra Entm't Grp. v. Bryant*, No. 03-6381GAF, 2004 U.S. Dist. LEXIS 26700, at *5 (C.D. Cal. Feb. 13, 2004). Plaintiffs' demand for relief must be specific, and it "must prove up the amount of damages." *Landstar*, 725 F. Supp. 2d at 923 (internal quotation marks omitted).

### A. *Withdrawal Liability*

To establish that Defendant is liable for the damages as a result of withdrawal from the multiemployer pension plan, Plaintiffs submitted multiple exhibits as well as the Declaration of Doug Wisman, an employee of the third-party administrator for the Plaintiff Fund. (Wisman Decl., ¶ 1). As discussed above, the exhibits establish that although Defendant was obligated to pay its withdrawal liability, upon its complete withdrawal, Defendant failed to do so despite Plaintiffs' notice. To support the damages sought in the amount of $722,679, Plaintiffs have provided a copy of the calculation of Defendant's assessed withdrawal liability, which is based on the statutory formulas contained in section 4211 of ERISA, 29 U.S.C. § 1391. (Wisman Decl. ¶¶ 7-9, Complaint Exhibit 3).

As defined by section 4201(b)(1) of ERISA, 29 U.S.C. § 1381(b)(1), an employer's withdrawal liability is the amount of its allocated unfunded vested benefits

11

subject to certain adjustments. Thus, the total amount due for the Defendant's proportionate share of the Fund's unfunded vested benefits totals $722,679.

Per section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), Plaintiff Fund was required to notify the Defendant of the amount of is liability and provide it with schedules for liability payments for each of the assessments. The payment requirements are set forth in section 4219(c)(1)(B) of ERISA, 29 U.S.C. § 1399(c)(1)(B), which provides that, in any case where the amortization of the payments would exceed twenty years, the Defendant's liability "shall be limited to the first 20 annual payments." This limitation assumes the payments are made. In other words, if Defendant makes the payments according to the schedule, on a voluntary basis, there is a limitation on the amount and number of payments that can be collected. Consistent with the foregoing, Plaintiff Fund's Notice and Demand explained to Defendant that "rather than the full assessment of $722,679," the Defendant had two alternatives for making payments based on the Fund's Withdrawal Liability Procedures. The first was to make monthly payments of $299.46 for twenty years. Twenty years of monthly payments (240 in total) at $299.46 per month equals $71,870.40. Alternatively, Defendant could pay a lump sum present value of the $71,870.40 in monthly installment payments in the amount of $57,594.

As established above, Defendant failed to make the payments and failed to cure its delinquency within 60 days as required under ERISA, and its default lead to this collection action. (Wisman Decl. ¶¶10-11.)

Because the Defendant failed to make any of the payments, and defaulted on its payment obligation, Defendant is now obligated to pay the full amount of the assessed liability pursuant to section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), and as provided for in Part V(9) of the Fund's Withdrawal Liability Procedures as amended by Amendment No. 5 (Exhibit 3 to Wisman Decl.)

Section 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), provides as follows:

12

> In the event of a default, a plan sponsor may require immediate payment of the *outstanding amount of an employer's withdrawal liability*, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means—
>> (A)   the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
>> (B)   any other event defined in rules adopted by the plan which indicates a substantial likelihood that employer will be unable to pay its withdrawal liability.

(Emphasis added.) The Fund's Withdrawal Liability Procedures, which are both binding on the Defendant and consistent with the language of the applicable statutes, provide as follows:

> In the event of a default, the Board of Trustees may require payment of the total outstanding amount of the employer's withdrawal liability determined without regard to the 20-year payment limitation under ERISA Section 4219(c)(1)(B) plus accrued interest from the date of the untimely payment as permitted by ERISA Section 4219(c)(5).

(See Part V(9) of the Fund's Withdrawal Liability Procedures as amended by Amendment No. 5, Exhibit 3 to Wisman Decl.). As noted above, the Demand for Cure notified the Defendant that the entire assessments shall be immediately due if the amount due under the payment plan was not paid within 60 days. The Defendant did not remit payment to cure the default. (Wisman Decl. ¶11.)

Section 4219 of ERISA, 29 U.S.C. § 1399, addresses the remedies available on default on payment of withdrawal liability. In doing so, it uses language that differs from the voluntary payment options available to an employer. Specifically, 29 U.S.C. § 1399(c)(4) speaks in terms of "annual withdrawal liability payments" when discussing the "payments" an employer is making. Conversely, 29 U.S.C. § 1399(c)(5) is the default provision and it speaks of an employer's withdrawal liability without reference to any qualifier or limitation based on a schedule of annual payments. "[C]ongress does not use different language in different provisions to accomplish the same result." *United States v. Fiorillo*, 186 F.3d 1136, 1148 (9th Cir. 1999), as

13

amended on denial of reh'g and reh'g en banc (Sept. 10, 1999). "[U]se of different language creates the inference that Congress meant different things." *Moore v. Harris*, 623 F.2d 908, 914 (4th Cir. 1980). Accordingly, the absence of this qualifier means it does not apply and cannot be read into the default provision. Consistent with the statutory language and the Plaintiff Fund's Withdrawal Liability Procedures upon the Defendant's default, Plaintiffs now seek recovery of the total amount of the Defendant's withdrawal liability, as opposed to the amount the Defendant could voluntarily pay.

Based on the foregoing, Defendant's default on the payment of its withdrawal liability has resulted in the total assessment amount of $722,679 being due and owing. The prior options communicated in the Notice of Demand of paying a stream of twenty-years of monthly payments, or a discounted lump sum based on the present value of the twenty-year stream of payments, are no longer available to the Defendant as a result of its default as set forth under Section 4219 of ERISA, 29 U.S.C. § 1399, and the Plaintiff Fund's Withdrawal Liability Procedures.

Therefore, based on this evidence, Plaintiffs have provided adequate support to establish that they are entitled to damages in the amount of $722,679.

## B. *Prejudgment Interest*

ERISA provides that "[i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution . . . ." 29 U.S.C. § 1451(b). In an action to enforce payment of delinquent contributions, a plaintiff is entitled to recover the unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2). See also *Operating Eng'rs Pension Trust Fund v. Clarke's Welding, Inc.*, 688 F. Supp. 2d 902, 915 (N.D. Cal. 2010).

Section 4219(c)(6) of ERISA, 29 U.S.C. § 1399(c)(6), provides in relevant part, that "interest under this subsection shall be charged at rates based on prevailing market

rates for comparable obligations, in accordance with regulations prescribed by the corporation." Prejudgment interest is calculated and assessed by the Plaintiff Fund's Administrative Office for each calendar quarter at an annual rate equal to the average quoted prime rate on short-term commercial loan. Moreover, the interest due is calculated from February 4, 2019, the date that payment was due, through the date the Judgment is entered. (Wisman Decl. ¶ 16.) At the time of the filing of this Motion, the resulting interest amount is $38,5889 plus $94.05 per day from February 6, 2020 (when this Motion was filed) until Judgment is entered by the Court. (Wisman Decl. ¶19).

## C. *Attorney's Fees and Costs*

Because Defendant was delinquent in paying the assessment of withdrawal liability, Plaintiffs are entitled to reasonable attorney's fees. 29 U.S.C. § 1132(g)(2)(D). Local Rule 55–3 states that where a statute provides for reasonable attorney's fees, those fees must be calculated according to the schedule provided under that Rule. The total delinquency here is $761,267 which includes withdrawal liability and prejudgment interest.   Additional prejudgment interest on the withdrawal liability will accrue at $94.05 per day since the filing of this Motion.  Local Rule 55–3's schedule establishes that where the amount of judgment is over $100,000.00, attorney's fees are calculated at $5,600 plus 2% of the amount over $100,000.00. This totals $18,825.34 in attorney's fees, plus an additional $1.88 per day based on the additional $94.05 per day in total prejudgment interest, until a judgment is entered. In addition, costs in this instant case total $1,720.50. (Wisman Decl. ¶ 22). Therefore, Plaintiffs are entitled to reasonable attorney's fees in the amount of at least $18,825.34 (plus an additional $1.88 per day until a judgment is entered) and costs in the amount of $1,720.50.

## VIII. Conclusion

For the reasons set forth above, the Court should grant this Motion for Default Judgment against Allen Printing, Inc.

///

///

15

Respectfully submitted,

Dated: <u>February 6, 2020</u>          <u>/s/ Valentina S. Mindirgasova</u>

Kerry K. Fennelly
Valentina S. Mindirgasova
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100 tel
(760) 747-1188 fax
kfennelly@kraw.com
vmindirgasova@kraw.com

Attorneys for Plaintiffs

16